1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                       NORTHERN DISTRICT OF CALIFORNIA

9

10   JORGE ALBERTO EK-LUNA,                 No. C 09-0726 MHP (PR)

11              Petitioner,               **ORDER DENYING PETITION FOR**
                                          **WRIT OF HABEAS CORPUS**
12        v.

13   DERRAL G. ADAMS,

14              Respondent.
     _____/
15

16                              **INTRODUCTION**

17        This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C.

18   § 2254.  For the reasons set forth below, the petition is DENIED.

19                              **BACKGROUND**

20        In 2006, a Marin County Superior Court jury convicted Petitioner of, inter alia, rape,

21   kidnapping to commit rape, committing a lewd act with a child, and robbery.  The jury also

22   found numerous sentencing enhancement allegations to be true.[1]  The trial court sentenced

23   Petitioner to a total term of twenty-nine years to life in state prison.[2]  Petitioner sought, and

24   was denied, relief on direct state review.  It appears that Petitioner did not seek state habeas

25   relief.

26        Evidence presented at trial showed that in 2006 Petitioner forcibly raped and

27   kidnapped the victim, Jane Doe (hereinafter "Jane").  The state appellate court summarized

28   the facts as follows:

At trial, 16-year-old "Jane Doe" [a native of El Salvador] testified through an interpreter. . . [that] [o]n the morning of February 13, 2006, she walked to San Rafael High School. Upon reaching the parking lot, she saw [Petitioner] behind her. He grabbed her from behind and took her cell phone, on which she had just finished a conversation. He covered her mouth with one hand and with the other he held a piece of glass — the top of a broken bottle — to her neck. He made her walk to the side and toward the back of the school building. It was about 8:05 a.m., classes had already started, so no one was outside. Half way along the length of the building he took her into the bushes, and threatened to kill her if she made noise. He told her to take off her clothes, which she did. He took off her underwear. He threw her to the ground and told her to open his pants, which she did. He took off his pants and underwear and had sex with her. After five or ten minutes, they got dressed.

With the jagged bottle top still at her neck, [Jane] followed [Petitioner] out of the bushes. He said he was taking her to a hotel to have "more sex" with her. There were people walking and cars driving by, but she couldn't scream because "he had the thing on my neck." He said if she told the police, he would "get even" with her. A police officer approached and [Petitioner] threw the bottle top and [Jane]'s cell phone under the patrol car. The officer had [Petitioner] stand aside while he talked to [Jane] through a translator. She did not remember whether she told the officer she had been sexually assaulted.

On cross-examination, [Jane] testified that the sharp-edged glass held to her neck did not wound her. At the preliminary hearing, she had testified that she had taken her underwear off at [Petitioner]'s request.

Several people observed [Jane] and [Petitioner] that morning. [Four eyewitnesses testified that they had seen Petitioner and Jane walking together; Petitioner's arm was around Jane's neck and Jane was crying or looked scared. Two of the witnesses called the police, including Oscar Garcia, a friend of Jane's mother.] None of the eyewitnesses saw anything in [Petitioner]'s hands.

Officer [] Mathis was dispatched to the scene. . . . As [Petitioner and Jane] approached, [Petitioner] removed his arm from around [Jane]'s shoulder. He appeared intoxicated. [Jane] was crying, so Mathis separated the two, sending [Petitioner] to sit near the patrol car's right front tire while he interviewed [Jane] . . . . [Jane] seemed upset, troubled. She told Mathis that [Petitioner] had approached her on her way to school and threatened to kill her at knife-point. Concerned for officer safety, Mathis obtained consent to search [Petitioner] and found only a wallet.

Oscar Garcia arrived on the scene and began to translate for Mathis. According to Garcia, [Jane] said [Petitioner] approached her from behind, held a piece of glass to her neck and said he would kill her if she didn't go with him. He had taken her cell phone and said he was going to take her to a hotel to have sex with her. At that point, Mathis noticed a piece of brown glass and a cell phone under the patrol car's right front tire, which [Jane] identified. She did not mention having been sexually assaulted.

. . . [L]ater, Mathis interviewed [Jane] at the station through a police interpreter, at which time she said she had been sexually assaulted.

2

United States District Court
For the Northern District of California

1

2

3

4

. . . [A] registered nurse . . . performed a sexual assault examination on [Jane]. [The nurse] found no external injuries, but was unable to determine if there were internal injuries because [Jane] was too nervous and embarrassed to permit a complete examination. [The nurse] did obtain vaginal swabs, however, which revealed [Petitioner]'s semen. [Petitioner]'s blood, but not [Jane]'s, was found on the broken beer-bottle top.

5

(Id., Ex. F at 2–4.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

As grounds for federal habeas relief, Petitioner alleges that: (1) the kidnapping conviction and one-strike kidnapping findings were not supported by substantial evidence, denying Petitioner due process of law; (2) the admission of evidence regarding rape trauma syndrome denied Petitioner his rights to due process and to confront his accuser; (3) the trial court's response to the jury question about weapon use denied Petitioner his rights to due process and to a jury determination of all issues; (4) the instructions on One-Strike kidnapping denied Petitioner his rights to due process and to a jury determination of all issues; (5) California law defining the asportation element of simple and aggravated kidnapping, and the elements required to distinguish between them, are unconstitutionally vague and denied Petitioner his rights to due process and equal protection of the law; (6) use of the CALCRIM No. 1192 jury instruction violated Petitioner's right to due process; (7) the reasonable doubt and related jury instructions violated Petitioner's rights to due process and to a jury determination of all issues beyond a reasonable doubt; (8) the use of the CALCRIM No. 376 jury instruction violated Petitioner's right to due process; (9) there was cumulative error; and (10) the twenty-five years-to-life sentence on the One-Strike kidnapping conviction deprived Petitioner of due process and equal protection of the law.

22

## STANDARD OF REVIEW

23

24

25

26

27

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996, a district court may not grant a habeas petition challenging a state conviction or sentence on the basis of a claim that

28

3

1    was reviewed on the merits in state court unless the state court's adjudication of the claim:

2    "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

3    clearly established Federal law, as determined by the Supreme Court of the United States; or

4    (2) resulted in a decision that was based on an unreasonable determination of the facts in

5    light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d);

6    Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).   The first prong applies both to

7    questions of law and to mixed questions of law and fact, Williams (Terry), 529 U.S. at

8    407–09, while the second prong applies to decisions based on factual determinations, Miller-

9    El v. Cockrell, 537 U.S. 322, 340 (2003).

10         A state court decision is "contrary to" clearly established federal law "if the state court

11   applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the

12   state court confronts a set of facts that are materially indistinguishable from a decision of [the

13   Supreme Court] and nevertheless arrives at a result different from [Supreme Court]

14   precedent."   Williams (Terry), 529 U.S. at 405–06.   An "unreasonable application" of federal

15   law occurs "if the state court identifies the correct governing legal principle from [Supreme

16   Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."

17   Id. at 413.   The federal court on habeas review may not issue the writ "simply because that

18   court concludes in its independent judgment that the relevant state-court decision applied

19   clearly established federal law erroneously or incorrectly."   Id. at 411.   Rather, the

20   application must be "objectively unreasonable" to support granting the writ.   Id. at 409.

21         In deciding whether a state court's decision is contrary to, or an unreasonable

22   application of, clearly established federal law, a federal court looks to the "last reasoned

23   decision" of the highest state court to address the merits of the petitioner's claim.   See Ylst v.

24   Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th

25   Cir. 2005).   Here, the "last reasoned decision" is the opinion of the California Court of

26   Appeal.   (Ans., Ex. F.)   For the reasons stated below, the state court's decision was neither

27   contrary to nor an unreasonable application of clearly established Supreme Court precedent,

28

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

1    nor was the state court decision based on an unreasonable determination of the facts.

2    **DISCUSSION**

3    **A.**    **Sufficiency of Evidence for Kidnapping**

4        Petitioner claims that he was denied due process of law because the kidnapping

5    conviction and One-Strike aggravated kidnapping findings were unsupported by substantial

6    evidence.  (Pet. at 9.)[3]  Petitioner contends that "neither the first or second movement here

7    really substantially increased the risk to Jane [] above and beyond that posed by the rape."

8    (Id.)

9        The state appellate court rejected Petitioner's claims.  (Ans., Ex. F at 7–8.)  It found

10    that a reasonable jury could conclude that "moving Jane [] from an outdoor parking lot at a

11    time when students and faculty were still arriving at school to a secluded spot in the bushes

12    toward the back of the building substantially decreased the likelihood of detection and

13    increased the opportunity for commission of further crimes."  (Id. at 7.)

14        The Due Process Clause "protects the accused against conviction except upon proof

15    beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

16    charged."  In re Winship, 397 U.S. 358, 364 (1970).  A reviewing federal court analyzes a

17    state prisoner's allegations of a due process violation based on insufficient evidence under

18    Jackson v. Virginia, 443 U.S. 307 (1979).  Under Jackson, a federal habeas court "determines

19    only whether, after reviewing the evidence in the light most favorable to the prosecution, any

20    rational trier of fact could have found the essential elements of the crime beyond a reasonable

21    doubt."  Id. at 319.  Only if no rational trier of fact could have found proof of guilt beyond a

22    reasonable doubt may the federal court grant the writ.  Id. at 324.

23        Under California law, for aggravated kidnapping to occur, "the victim must be forced

24    to move a substantial distance, the movement cannot be merely incidental to the target crime,

25    and the movement must substantially increase the risk of harm to the victim."  People v.

26    Dominguez, 39 Cal. 4th 1141, 1153 (2006).  In assessing whether the movement was

27    "incidental" or a "substantial distance," a jury considers "the context of the environment in

28

5

United States District Court
For the Northern District of California

which the movement occurred" and the scope and nature of the movement.  People v. Rayford, 9 Cal. 4th 1, 12 (1994).   While this includes consideration of the actual distance the victim is moved, the asportation requirement does not have a fixed minimum distance; the requirement is that the movement is substantial.  Dominguez, 39 Cal. 4th at 1152.  "The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement."  Id.  Thus, a jury should also consider "whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes."  Id.

Here, evidence existed on which a reasonable juror could find Petitioner guilty of aggravated kidnapping.  According to Jane's testimony, Petitioner grabbed her from behind, held a broken glass bottle top to her neck, and told her to walk forward to the side of a building.  (Ans., Ex. B, Vol. 2 at 131–36.)  Petitioner and Jane did not stay on the path outside the building.  (Id. at 136–37.)  Instead, Petitioner pushed Jane to the ground inside some bushes and sexually assaulted her.  (Id. at 139–44.)  Kathryn Hokanson, an administrative assistant at Jane's high school, whose open window overlooked the bushes where the crime occurred, testified that the pathway alongside the building was not heavily-traveled and that it is not seen from the main campus at the high school.[4]  (Id., Ex. B, Vol. 5 at 510).

This evidence shows, contrary to Petitioner's assertion, that the forced asportation of Jane to the bushes substantially increased the risk of harm to Jane.  Petitioner forced Jane to move about 150 feet to the side of a building and into the bushes, where he sexually assaulted her.  In addition, the path alongside the bushes was not well-traveled by others.  Consequently, the movement changed Jane's environment from a relatively open area to a place significantly more secluded, decreasing the possibility of detection, escape or rescue.  As such, this Court concludes that a rational juror could find beyond a reasonable doubt that moving a victim from a parking lot to bushes along the side of a pathway that was not well-traveled did "decrease[ ] the likelihood of detection, increase[ ] the danger inherent in a

1   victim's foreseeable attempts to escape, or enhance[ ] the attacker's opportunity to commit

2   additional crimes."  <u>Dominguez</u>, 39 Cal. 4th at 1152.  Accordingly, Petitioner's claim is

3   DENIED.

4   **B.     Expert Testimony on Rape Trauma Syndrome**

5          Petitioner asserts that the trial court denied him his rights to due process and to

6   confront his accuser by admitting expert testimony about rape trauma syndrome ("RTS").

7   (Pet. at 10.)  Specifically, Petitioner contends that the trial court violated his constitutional

8   rights by (1) failing to scrutinize the myths or misconceptions the RTS testimony was

9   supposed to rebut, "permitting it to be used in unfair predictive fashion to bolster [Jane's]

10  credibility and even predict whether a rape occurred"; and (2) improperly admitting expert

11  testimony about Latina sexual assault victims without adequate foundational showing of the

12  witness's expertise in cultural differences.  (<u>Id.</u>)

13         The trial court permitted the prosecution to present expert testimony about RTS for

14  the limited purpose of presenting proof that Jane's conduct was consistent with that of

15  someone who has been raped, not to try to prove that the alleged sexual assault had occurred.

16  (<u>Id.</u>, Ex. F at 8.)  At trial, Marcia Blackstock, who has been the executive director of a rape

17  crisis center for over twenty years and sexual assault counselor for twenty-eight years,

18  testified as an expert in the area of RTS and the common reaction of sexual assault victims.

19  (Ans., Ex. F at 8; Ex. B, Vol. 4 at 379.)  According to Blackstock, not only do sexual assault

20  victims not always immediately try to escape from an attacker because they are in shock and

21  "believe the attacker is all powerful," but also it is common for assault victims not to fight

22  back.  (<u>Id.</u>)  Moreover, most rape victims "never report that they have been sexually

23  assaulted . . . [a]nd if they do make a report, it is almost always delayed," because of the

24  trauma of the assault and because of the fear of how others may react to the assault.  (<u>Id.</u> at

25  8–9.)  Furthermore, while the demeanor of rape victims varies, the internal reactions are

26  pretty universal in that the victims exhibit a "super human calmness" due to the shock.  (<u>Id.</u>

27  at 9.)  Blackstock also explained that RTS consists of three phases, and that in order to

28

United States District Court
For the Northern District of California

1   function, most victims stay in the second phase of "outward adjustment," where they push

2   aside their feelings regarding the rape for a long time until they are able to acknowledge what

3   has happened and figure out how to deal with it.  (Id. at 9.)

4          Based on her experience, Blackstock also testified as to the cultural stigma associated

5   with sexual assault in the Latino community.  (Id. at 9.)  Blackstock's organization has a

6   Latina outreach program that mainly serves Latina immigrants.  (Id. at 9.)  According to

7   Blackstock, in Latino immigrant communities, because of culture and religion and issues of

8   virginity, there can be stronger stigma as to a sexual assault than in some other communities

9   as well as stronger issues of shame that arise because of the experience.  (Ans., Ex. B, Vol. 4

10  at 387.)  In addition, Blackstock explained that in many immigrant communities it may be

11  hard for victims to obtain help because of the hesitation "to take things outside the family"

12  and the "fear of deportation."  (Id.)

13         **1.     Due Process**

14         A state court's erroneous admission of evidence is not subject to federal habeas

15  review unless a specific constitutional guarantee is violated or the error is of such magnitude

16  that the result is a denial of the fundamentally fair trial guaranteed by due process.  See

17  Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The due process inquiry in federal habeas

18  review is whether the admission of evidence was arbitrary or so prejudicial that it rendered

19  the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).

20  "Only if there are no permissible inferences the jury may draw from the evidence can its

21  admission violate due process."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

22         Here, Petitioner has not shown that the admission of the RTS testimony warrants

23  habeas relief.  First, the prosecution presented Blackstock's testimony only to rebut the

24  inferences possibly drawn from Jane's conduct that emerged from her testimony; that is, to

25  rebut the inference "that a young woman who does not scream, resist, flee, sustain physical

26  injury or immediately characterize the incident as rape has not, in fact, been raped."  (Ans.,

27  Ex. F at 11.)  The prosecution did not offer Blackstock's testimony in order for her to opine

28

United States District Court
For the Northern District of California

as to whether a rape had occurred or to show that Petitioner had raped Jane.  Blackstock, in fact, had not met or examined Jane.  Indeed, on cross-examination, Blackstock "explained that RTS describes the normal reaction of a victim; it does not indicate whether a rape occurred in any particular case."  (Id. at 9.)

Second, the prosecutor did not argue the RTS testimony to the jury in his closing argument and the trial court gave a limiting instruction to the jury nonetheless.  (Id.)  The trial court instructed that Blackstock's testimony "is not evidence that the defendant committed any of the crimes charged against [him].  You may consider this evidence only in deciding whether or not [Jane]'s conduct was not inconsistent with the conduct of someone who has been raped, and in evaluating the believability of her testimony."  (Id.)  Jurors are presumed to follow their instructions.  See Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Third, even if Blackstock's testimony concerned the ultimate issue, a claim based on such a contention would be foreclosed by case law.  The Supreme Court has left open the question whether the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact.  See Moses v. Payne, 543 F.3d 1090, 1105 (9th Cir. 2008).  Furthermore, the Ninth Circuit has declared that it is well-established that expert testimony on an ultimate issue is not per se improper.  Id. at 1106.  Because Petitioner's claim is based on the opposite proposition, it necessarily fails.

Finally, the record supports the trial court's decision to allow Blackstock to answer questions as to the cultural stigma that attaches to sexual assault in the Latino community.  Blackstock had worked as a sexual assault counselor for twenty-eight years and was the executive director of a rape crisis center, which had a Latina outreach project, serving mainly immigrants.  (Ans., Ex. B, Vol. 4 at 379, 385.)  Blackstock only answered a few short questions about Latina sexual assault victims to the extent that her experience enabled her to do so.  (Id. at 386–87.)  Based on the record, this Court cannot conclude that the admission of Blackstock's testimony was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Accordingly, Petitioner's due process claim is DENIED.

**United States District Court**
For the Northern District of California

### 2. Confrontation Clause

Petitioner also claims that the trial court denied him his right to confront his accuser by admitting Blackstock's expert testimony.  He argues that "by unfairly bolstering specific weaknesses in the complainant's credibility, the authoritative evidence further denied appellate a fair chance to confront and cross-examine his accuser's credibility based on the facts of the case."  (Pet. at 11–12.)

The Confrontation Clause of the Sixth Amendment provides that in criminal cases, the accused has the right to "be confronted with witnesses against him."  U.S. Const. amend. VI.  Here, Petitioner's claim is without merit.  The record clearly shows that Petitioner did in fact cross-examine both his accuser, Jane, and Blackstock.  (See Ans., Ex. B, Vol. 2 at 157–83, 186; id., Ex. B, Vol. 4 at 388–94.)  During the cross-examinations, the defense attacked the credibility of Jane's testimony and the reliability of Blackstock's testimony.  Thus, this Court cannot say that the trial court violated Petitioner's right to confront his accuser.

Accordingly, Petitioner's claim is DENIED.

## C.    Trial Court's Response to Jury's Question

Petitioner next contends that the trial court's response to the jury's question about personal use of a dangerous weapon was "inadequate, unbalanced, and coercive of a verdict," denying Petitioner of his rights to due process and a jury determination of all issues.  (Pet. at 14.)

The relevant facts are as follows.  Five counts of the information included the additional allegation that Petitioner personally used a dangerous weapon; here, a broken bottle.  (Ans., Ex. F at 11.)  As to these counts, the trial court instructed the jury that "[s]omeone personally uses a deadly or dangerous weapon if he or she intentionally displays the weapon in a menacing manner."  (Id. at 12.)  During deliberations, the jury asked the court whether "personal use of a deadly or dangerous weapon" requires the victim to have "visually seen the weapon."  (Id., Ex. F at 12.)  After conferring with counsel and considering the case law, the trial court responded:

10

1   As to the term 'personal use of a deadly or dangerous weapon' generally see
2   [I]nstruction number 3145.  The word 'displays' . . . means that the alleged
    victim must be aware of the presence of the alleged deadly or dangerous
3   weapon.  However, the law does not require that such awareness be
    accomplished or made through the sense of sight.

4   (Id.)

5       The state appellate court rejected Petitioner's claim, finding that "displays" means that

6   the "victim is made aware of [the weapon's] presence" through sensory perception, but not

7   necessarily through visual observation.  (Id. at 12.)

8       To obtain federal habeas relief for errors in the jury instruction, a petitioner must show

9   that the trial court's error "so infected the entire trial that the resulting conviction violates due

10  process."  Estelle, 502 U.S. at 72 (internal quotes omitted).  "[T]he instruction 'may not be

11  judged in artificial isolation,' but must be considered in the context of the instructions as a

12  whole and the trial record."  Id. (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  The

13  reviewing federal habeas court must inquire whether there is a "reasonable likelihood" that

14  the jury applied the challenged instruction in a way that violates the Constitution.  Estelle,

15  502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).

16      "When a jury makes explicit its difficulties, a trial judge should clear them away with

17  concrete accuracy."  Bollenbach v. United States, 326 U.S. 607, 612–13 (1946).  However,

18  the trial judge has wide discretion in charging the jury.  Arizona v. Johnson, 351 F.3d 988,

19  944 (2003).  Such discretion "carries over to a trial judge's response to a question from the

20  jury."  Id. (citing Allen v. United States, 186 F.2d 439, 444 (9th Cir. 1951) ("the giving of

21  additional instructions has always been held to be within the discretion of the trial court")).

22  Thus, the precise manner by which the court fulfills its obligation to address the jury's

23  difficulties is a matter committed to its discretion.  Johnson, 351 F.3d at 944.

24      In the instant case, before responding to the jury's question, the trial judge conferred

25  with counsel and considered case law addressing the issue whether "personal use of a deadly

26  or dangerous weapon" requires the victim to have seen the weapon visually.  (Ans., Ex. B,

27  Vol. 7 at 923.)  Using his discretion, the trial judge determined that simply reiterating the

28

11

jury instruction would not be enough to address the jury's difficulties.  Rather, in order to comply with his duty to help the jury understand the phrase in question, the trial judge provided a clarification in the context of the jury instruction, as described above.  Because the trial court has wide discretion in determining the precise manner in which it addresses the jury's difficulties with the jury instructions, see Johnson, 351 F.3d at 944, this Court cannot say that the trial judge violated Petitioner's right to due process.

Furthermore, the challenged instruction by itself did not "so infect[] the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72.  At trial, defense counsel argued that the trial judge's response to the jury's question violated Petitioner's right to due process because the judge "usurped the jury's constitutional function as the sole judge as to the facts," and because the judge "commented on the facts . . . in such a way [that the judge] assist[ed] the jury in reaching a verdict." (Ans., Ex. B, Vol. 7 at 925.)  First of all, the trial judge did not comment on the facts, but rather explained the meaning of a legal element of a charge.  In addition, in the other instructions, the trial court reminded the jury of its responsibility to decide the facts of case based on the evidence presented, to presume that Petitioner is innocent, and to convict Petitioner only if the prosecution has proved the elements of its case beyond a reasonable doubt.  (Id. at 780–83.)  Viewing the instructions as a whole, rather than viewing the instruction on personal use of a deadly or dangerous weapon in isolation, this Court concludes that the jury instruction did not violate Petitioner's right to due process.

Petitioner's claim is DENIED.

**D.    One-Strike Kidnap Instruction**

Petitioner claims that the trial court violated his rights to due process and a jury determination of all issues by charging the jury with a modified jury instruction on the aggravated kidnapping One Strike sex offense allegation.  (Pet. at 16.)

In pertinent part, the standard version of the relevant instruction, CALCRIM No. 3175, instructs:  "Substantial distance means more than a slight or trivial distance.  The

movement must be more than merely incidental to the commission of [rape].  In deciding whether the distance was substantial and whether the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement."

The trial court gave a modified version of No. 3175.  The jury was instructed that in order for the prosecution to prove the aggravated kidnapping One Strike sex offense allegation true, it must prove, inter alia, that Petitioner moved Jane a "substantial distance," a movement which "substantially increased the risk of harm to her beyond that necessarily present in the crime of rape."  (Ans., Ex. F at 13.)  The trial court explained:

> Substantial distance means more than a slight or trivial distance.  In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement.  Thus, in addition to considering the actual distance moved you must also consider other factors in order to determine whether the movement substantially increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decrease the likelihood of detection.

(Id.)

The modified version of CALCRIM No. 3175 used by the trial court differs from the standard version of CALCRIM No. 3175 in two main respects.  First, it does not include "movement must be more than merely incidental" to the crime.  Second, it elaborates on the circumstances relating to the movement that the jurors must consider in determining whether the distance was substantial.  Petitioner contends that the modified instruction given to the jury erroneously omitted the "more than merely incidental" language as well as the consideration of "all the circumstances" language on the issue of substantially increased risk of harm.  (Id.)

The state appellate court determined that "movement that is not merely incidental to the commission of the associated offense is not an 'essential element' of the crime of kidnapping, but rather a circumstance for the jury to consider in weighing the substantial distance factor of the asportation element."  (Ans., Ex. F at 15.)  Based on that determination, the state appellate court concluded that "any instructional error in th[at] regard is far from implicating a federal constitutional right subject to the Chapman standard of prejudice."  (Id.)

**United States District Court**
For the Northern District of California

1    A challenge to a jury instruction solely as an error under state law does not state a

2  claim cognizable in federal habeas corpus proceedings.  Estelle, 502 U.S. at 71–72.  To

3  obtain federal habeas relief for errors in the jury instruction, Petitioner must show that the

4  court's error "so infected the entire trial that the resulting conviction violates due process."

5  Id. at 72 (internal quotes omitted).  "[T]he instruction 'may not be judged in artificial

6  isolation,' but must be considered in the context of the instructions as a whole and the trial

7  record."  Id. (quoting Cupp, 414 U.S. at 147).  The reviewing federal habeas court must

8  inquire whether there is a "reasonable likelihood" that the jury applied the challenged

9  instruction in a way that violates the Constitution.  Estelle, 502 U.S. at 72 (quoting Boyde,

10  494 U.S. at 380).

11    Furthermore, a federal habeas court is bound by a state court's interpretation of state

12  law.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing Estelle, 502 U.S. 67–68).  Thus, the

13  state appellate court's determination — that "movement that is not merely incidental to the

14  commission of the associated offense" is not an "essential element" of the crime of

15  kidnapping — is not open to challenge on habeas review.  See id.  There is no constitutional

16  requirement that a jury determine whether the movement was not merely incidental to the

17  commission of the associated crime where the state has not made such a finding an element

18  of the charged offense.  In other words, Petitioner does not state a claim cognizable in a

19  federal habeas proceeding.

20    Accordingly, Petitioner's claim is DENIED.

21 **E.    Asportation Element of Kidnapping Offenses**

22    Next, Petitioner asserts that California law defining "asportation" in simple and

23  aggravated kidnapping is unconstitutionally vague on its face, and as applied, denies him due

24  process and equal protection of the law.  (Pet. at 18.)  Specifically, Petitioner claims that

25  because there is no fixed minimum distance that satisfies the substantial movement element

26  of asportation and because the asportation element of simple and aggravating kidnapping

27  involves consideration of the same three factors, the two kidnapping statutes are susceptible

28

1  to arbitrary enforcement, with divergent results in terms of conviction and sentencing on

2  similar facts.  (Id. at 17–20.)

3       The state appellate court rejected Petitioner's claims, finding that the California

4  Supreme Court "has repeatedly reiterated the conclusion . . . that to define the 'actual

5  distance' aspect of the asportation element of kidnapping 'in terms of a specific number of

6  inches or feet or miles would be open to a charge of arbitrariness,'" whereas "a standard such

7  as 'substantial' is 'not impermissibly vague, provided [its] meaning can be objectively

8  ascertained by reference to common experiences of mankind.'"  (Ans., Ex. F at 16.)  The

9  state appellate court acknowledged that "California law governing the asportation element of

10 kidnapping is not a model of clarity," but ultimately held that it was not unconstitutional.

11 (Id. at 17.)

12      **1.    Vagueness**

13      To comply with due process, a state must "provide meaningful standards to guide the

14 application of its laws."  See Kolender v. Lawson, 461 U.S. 352, 358 (1983).  To avoid

15 unconstitutional vagueness, a statute or ordinance must (1) define the offense with sufficient

16 definiteness that ordinary people can understand what conduct is prohibited; and (2) establish

17 standards to permit law enforcement to enforce the law in a non-arbitrary, non-discriminatory

18 manner.  Vlasak v. Superior Court of California, 329 F.3d 683, 688–89 (9th Cir. 2003).  A

19 statute will have the certainty required by the Constitution "if its language conveys

20 sufficiently definite warning as to the proscribed conduct when measured by common

21 understanding and practices."  Panther v. Hames, 991 F.2d 576, 578 (9th Cir. 1993) (internal

22 quotations omitted).  In a facial vagueness challenge, the reviewing court must look to the

23 plain language of the statute, as well as construe the statute as the state courts have

24 interpreted it.  Nunez by Nunez v. City of San Diego, 114 F.3d 935, 941–42 (9th Cir. 1997).

25      In the instant case, this Court concludes that the California statutes defining the

26 asportation element of simple kidnapping and aggravated kidnapping are not

27 unconstitutionally vague.  The asportation element prohibits the defendant from using force

28

**United States District Court**
For the Northern District of California

15

United States District Court
For the Northern District of California

1    or fear to move the detained victim a substantial distance without the victim's consent.  <u>See</u>

2    Cal. Pen. Code § 209(b)(1); CALCRIM No. 1215; CALCRIM No. 3175.  Thus, the statutes

3    define the asportation element of the crime in terms of the standard, "substantial distance."

4    They explain that "substantial distance means more than a slight or trivial distance" and

5    depends on "all the circumstances relating to the movement."  <u>Id.</u>  CALCRIM No. 3175

6    points out that the movement must "substantially increase the risk of harm to [the victim]

7    beyond that necessarily present in the [relevant sex offense]."  CALCRIM No. 1215

8    elaborates on the circumstances relating to the movement and instructs that in addition to

9    considering the actual distance the person was moved, the jury may also consider factors

10   such as whether the movement increased the risk of harm, gave the attacker a greater

11   opportunity to commit additional crimes, or decreased the likelihood of escape or detection.

12   <u>See</u> CALCRIM No. 1215.

13          Under the first prong of the <u>Vlasak</u> analysis, any ordinary person would understand

14   that whether the actual distance the victim is moved can be characterized as "substantial"

15   depends such circumstances.  Moreover, the statutes make clear that inconsequential or

16   attendant movements are not punishable under the statutes.  <u>See</u> Cal. Pen. Code § 209(b)(2).

17          Under the second prong of the <u>Vlasak</u> analysis, this Court concludes that the statutes

18   establish standards that permit police to enforce the law in a non-arbitrary, non-

19   discriminatory manner.  By defining "asportation" by way of "substantial" instead of in terms

20   of a specific fixed minimum distance in inches, feet or miles, the statute allows the police to

21   take into consideration the circumstances related to the movement, decreasing the likelihood

22   of arbitrary results.  Contrary to Petitioner's suggestion, if the statutes defined the asportation

23   element in terms of a "fixed minimum distance," that could lead to arbitrary and

24   discriminatory enforcement of the law.  For example, if the "fixed minimum distance" were

25   300 feet, a defendant could be charged with kidnapping for moving a victim 300 feet within a

26   large, open room, whereas another defendant could not be charged with kidnapping for

27   moving a victim 280 feet from the victim's house to the defendant's basement next door.

28

United States District Court
For the Northern District of California

1   The California Supreme Court's decisions in People v. Daniels, 71 Cal. 2d 1119 (1969),

2   People v. Rayford, 9 Cal. 4th 1 (1994), and People v. Martinez, 20 Cal. 4th 225 (1999) are

3   consonant with that of this Court.

4       In addition, the statutes are not unconstitutionally vague as applied to Petitioner's

5   action.  Petitioner moved Jane through a parking lot, down a pathway alongside a building in

6   an area not frequented by others, and into the bushes in order to rape Jane.  (Ans., Ex. B, Vol.

7   2 at 131–37; Ex. B, Vol. 6 at 661–63.)  Under such circumstances, the distance Petitioner

8   moved Jane in order to rape her fairly could be considered a "substantial distance."

9       Accordingly, this claim is DENIED.

10      **2.      Equal Protection**

11      Petitioner also contends that California law violates the Equal Protection Clause

12  because it allows for arbitrary enforcement and divergent results in terms of conviction and

13  sentencing on similar facts.  (Pet. at 17, 19.)

14      Unless the United States Supreme Court requires otherwise, a state law that mandates

15  the same treatment for any person who commits a particular crime does not violate the Equal

16  Protection Clause.  See Alvarado v. Hill, 252 F.3d 1066, 1069–70 (9th Cir. 2001).  Here, this

17  Court concludes that the statutes do not violate the Equal Protection Clause.  Applying

18  Alvarado v. Hill, this Court finds that California law mandates the same treatment for any

19  person who commits either simple kidnapping or aggravated kidnapping.  Petitioner argues

20  that the asportation element of both simple and aggravated kidnapping "appear to be the very

21  same," yet defendants can receive divergent sentences based on the same facts surrounding

22  the asportation. (Pet. at 19–20.)  Contrary to Petitioner's assertion, however, defendants can

23  receive disparate sentences based on similar asportations because simple kidnapping and

24  aggravated kidnapping themselves are two different offenses.  Simple kidnapping, see Cal.

25  Pen. Code § 207, is the stealing or detention of another person by means of force or fear.

26  Aggravated kidnapping, see Cal. Pen. Code §§ 209 & 209.5, is the holding or detention of

27  another person in order to commit robbery, rape, or another statutorily-specified crime.  As

28

17

each is a separate crime, and each involves a separate and different punishment, the Equal Protection Clause is not implicated because defendants are treated similarly under the same laws. Accordingly, Petitioner's claim is DENIED.

**F.     Instruction on Rape Trauma Syndrome**

Petitioner claims that the use of the CALCRIM No. 1192 jury instruction on RTS violated his right to due process because it creates unconstitutional presumptions that reduce the prosecution's burden of proof on issues of credibility and guilt. (Pet. at 21–22.) The state appellate court rejected Petitioner's claim, finding that the jury instruction did not create a conclusive or burden-shifting presumption because the instruction did not contain any mandatory language that the jury could construe as directing them to reach a result without a finding of proof beyond a reasonable doubt. (Ans., Ex. F at 18–20.)

As given to the jury, CALCRIM No. 1192 states:

> You have heard testimony from [Blackstock], regarding [RTS]. [Blackstock]'s testimony about [RTS] is not evidence that the defendant committed any of the crimes charged against [him].

> You may consider this evidence only in deciding whether or not [Jane]'s conduct was not inconsistent with the conduct of someone who has been raped, and in evaluating the believability of her testimony.

(Id. at 18).

In analyzing whether the instant challenged instruction creates an evidentiary inference that violates due process, the first step is to determine whether the instruction creates a mandatory presumption or a permissive inference. See United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994). "A mandatory presumption tells the jury that it must presume that an element of a crime has been proven if the government proves certain predicate facts." Id. It can be either conclusive or rebuttable, i.e., burden shifting. Sandstrom v. Montana, 442 U.S. 510, 514–15 (1979). If a mandatory presumption relieves the state of the burden of persuasion on an element of the charged offense, it violates due process because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[] certain elements of [the charged offense] . . . and relieve[s] the State of its burden of . . . proving by

*United States District Court*
*For the Northern District of California*

1   evidence every essential element of [the] crime beyond a reasonable doubt," but it can be

2   reviewed for harmless error.  Carella v. California, 491 U.S. 263, 265–66 (1989).

3        By contrast, "a permissive inference instruction allows, but does not require, a jury to

4   infer a specified conclusion if the government proves certain predicate facts."  Warren, 25

5   F.3d at 897.  An instruction that merely creates a permissive inference does not shift the

6   burden of proof or relieve the state of its burden of persuasion because "it still requires the

7   state to convince the jury that the suggested conclusion should be inferred based on the

8   predicate facts proved."  Francis v. Franklin, 471 U.S. 307, 314 (1985).  However, a

9   permissive inference may violate due process unless it can be said "'with substantial

10  assurance'" that the inferred fact is "'more likely than not to flow from the proved fact on

11  which it is made to depend.'"  County Court of Ulster County v. Allen, 442 U.S. 140, 166 &

12  n.28 (1979) (quoting Leary v. United States, 395 U.S. 6, 36 (1969)).

13        Here, the record does not support Petitioner's claim that CALCRIM No. 1192 created

14  unconstitutional presumptions in violation of due process.  First, as the state appellate

15  correctly identified, CALCRIM No. 1192 does not create a mandatory presumption.  (See

16  Ans., Ex. F at 18.)  The RTS instruction does not require the jury to infer a fact.  Rather, it

17  instructs jurors that they "may" consider the RTS testimony in evaluating Jane's credibility,

18  and it expressly warns the jury not to consider the RTS testimony as evidence of the charged

19  crime.  See CALCRIM No. 1192.  Furthermore, there is nothing in the RTS instruction that

20  even suggests a shift or reduction in the prosecution's burden of proof.   Thus, Petitioner's

21  argument that the RTS instruction violates due process fails on this ground as well.

22        Moreover, this Court cannot say that the challenged instruction by itself "so infected

23  the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 72.

24  Jury instructions must be considered by a federal habeas court in their entirety, and not in

25  isolation.  Id. (quoting Cupp, 414 U.S. at 147).  Firstly, the trial court instructed the jury that

26  the RTS testimony is not evidence of whether a rape had occurred, and that they may only

27  consider the RTS testimony in evaluating the credibility of Jane.  Secondly, in the other

28

instructions, the trial court reminded the jury of its responsibility to decide the facts of the case based on the evidence presented, to presume that Petitioner is innocent, and to convict Petitioner only if the prosecution has proved the elements of its case beyond a reasonable doubt.  (Ans., Ex. B, Vol. 7 at 780–83.)  Viewing the instructions as a whole, this Court concludes that the RTS instruction did not lessen the prosecution's burden of proof, or otherwise violate Petitioner's constitutional rights.  Accordingly, Petitioner's claim is DENIED.

### G.   Robbery Instruction

Next, Petitioner claims that the use of CALCRIM No. 376 lessened the prosecution's burden of proof on the robbery charge because it contained an "unconstitutional irrational permissive inference of guilt" in violation of his due process rights.  (Pet. at 24.)

On the robbery charge, the trial court instructed the jury:

> If you conclude that [Petitioner] knew he possessed property and you conclude that the property had, in fact, been recently stolen, you may not convict [Petitioner] of robbery based on those facts alone.  However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed robbery.

> The supporting evidence need only be slight and need not be enough by itself to prove guilt.  You may consider how, where and when [Petitioner] possessed the property along with any other relevant circumstances relating to his guilt or innocence of robbery or any lesser offense thereto.

> Remember that you may not convict [Petitioner] of any crime unless you are convinced that each fact essential to the conclusion that [Petitioner] is guilty of that crime has been proved beyond a reasonable doubt.

(Ans., Ex. B, Vol. 7 at 809.)  The state appellate court rejected Petitioner's claim on grounds that other courts have held that the use the predecessor robbery instruction, CALJIC No. 2.15, did not violate a criminal defendant's due process rights.  (Id., Ex. F at 20–21.)

Here, the record does not support Petitioner's claim that the challenged instruction created a permissive inference of his guilt, thereby lessening the prosecution's burden of proof or otherwise denying him due process of law.  First, as the state appellate court recognized, precedent from the U.S. Supreme Court as well as the California Supreme Court

1 supports the proposition that:

> [r]equiring only "slight" corroborative evidence in support of a permissive inference, such as that created by possession of stolen property, does not change the prosecution's burden of proving every element of the offense, or otherwise violate the accuser's right to due process unless the conclusion suggested is not one that reason or common sense could justify in light of the proven facts before the jury.

(Ans., Ex. F at 20).  Second, it can be said with substantial assurance that the inferred fact that Petitioner himself stole the property more likely than not flowed from the proved fact that Petitioner possessed the recently stolen property at issue in this case.  The stolen item at issue was Jane's phone.  Jane testified she did not willingly give it to Petitioner:  "the man grabbed me from behind and took my phone away."  (See id., Ex. B, Vol. 2 at 131.)  Petitioner also testified that he possessed Jane's phone, (see id., Vol. 6 at 661), and had removed it from his pocket while sitting in front of the patrol car (see id. at 670–71).  Because it is clear that Petitioner possessed Jane's stolen phone, it can reasonably be inferred that Petitioner stole the phone.

Moreover, this Court cannot say that the challenged instruction by itself "so infected the entire trial that the resulting conviction violates due process."  Estelle, 502 U.S. at 72.  Jury instructions must be considered by a federal habeas court in their entirety, and not in isolation.  Id. (quoting Cupp, 414 U.S. at 147).  For one, not only did the trial court instruct the jury that they "may not convict [Petitioner] of any crime unless [they] are convinced that each fact essential to the conclusion that [Petitioner] is guilty of that crime has been proved beyond a reasonable doubt" but the trial court also instructed that the jury may not convict Petitioner of robbery based solely on the facts that "[Petitioner] knew he possessed property" and "that the property had, in fact, been recently stolen."  (Ans., Ex. B, Vol. 7 at 809.)  In addition, in the other instructions, the trial court reminded the jury of its responsibility to decide the facts of the case based on the evidence presented, to presume that Petitioner is innocent, and to convict Petitioner only if the prosecution has proved the elements of its case beyond a reasonable doubt.  (Id., Ex. B, Vol. 7 at 780–83.)  Viewing the instructions as a

21

1   whole, this Court concludes that the robbery instruction did not lessen the prosecution's

2   burden of proof. Accordingly, Petitioner's claim is DENIED.

3   **H.      Reasonable Doubt Instructions**

4            Petitioner contends that the reasonable doubt and related jury instructions violated his

5   rights to due process and a jury determination of all issues beyond a reasonable doubt.  (Pet.

6   at 23.)  Specifically, Petitioner argues that such instructions are unconstitutional because they

7   do not instruct that reasonable doubt may be based on the absence of evidence, and that the

8   "abiding conviction" language in CALCRIM No. 220 conveys a "clear and convincing"

9   rather than a "beyond a reasonable doubt" standard of proof.  (Id. at 25–26.)  Upon noting

10  that the California courts have repeatedly rejected Petitioner's claims and that the Supreme

11  Court of the United States has expressly upheld the "abiding conviction" language, the state

12  appellate court rejected both of Petitioner's claims.  (Ans., Ex. F at 21–22.)

13           Using a modified version of CALCRIM No. 220, the trial court instructed the jury that

14  "[p]roof beyond a reasonable doubt is proof that leaves you with an abiding conviction that

15  the charge is true," and that in deciding whether the prosecution has proved its case beyond a

16  reasonable doubt, "you must impartially compare and consider all the evidence that was

17  received throughout the entire trial."  (Id., Ex. B, Vol. 7 at 782–83.)  The trial court also

18  instructed the jury, "You must decide what the facts are in this case.  You must use only the

19  evidence that was presented in this courtroom or during a jury view.  Evidence is the sworn

20  testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to

21  consider as evidence."  (Id. at 783.)

22           The "beyond a reasonable doubt" standard is a requirement of due process, but the

23  Constitution neither prohibits trial courts from defining reasonable doubt nor requires them

24  to do so as a matter of course.  Victor v. Nebraska, 511 U.S. 1, 6 (1994).  So long as the trial

25  court instructs the jury on the necessity that the defendant's guilt be proven beyond a

26  reasonable doubt, the Constitution does not require that any particular form of words be used

27  in advising the jury of the government's burden of proof.  Id.  Rather, taken as a whole, the

28

**United States District Court**
For the Northern District of California

22

**United States District Court**
For the Northern District of California

1   instructions must correctly convey the concept of reasonable doubt to the jury. Id. (citing

2   Holland v. United States, 348 U.S. 121, 140 (1954)).  The proper inquiry is "whether there is

3   a reasonable likelihood that the jury understood the instructions to allow conviction based on

4   proof insufficient to meet the [In re] Winship [397 U.S. 358 (1970)] standard [that the jurors

5   are able to say that the evidence before them is sufficient to show the existence of evidence

6   of every fact necessary to constitute the crime charged.]"  Victor, 511 U.S. at 6.

7       Here, the challenged instruction does not suggest an impermissible definition of

8   reasonable doubt.  CALCRIM No. 220 defines proof beyond a reasonable doubt as "proof

9   that leaves [one] with an abiding conviction that the charge is true."  Contrary to Petitioner's

10  assertion, therefore, CALCRIM No. 220 instructs jurors that reasonable doubt is the "absence

11  of an abiding conviction in the truth of the charges" and to acquit in the absence of proof.

12  People v. Guerrero, 155 Cal. App. 4th 1264, 1268 (2007).  In Victor v. Nebraska, the

13  Supreme Court of the United States upheld the "abiding conviction" language and explained

14  that "[a]n instruction cast in terms of an abiding conviction as to guilt, without reference to

15  moral certainty, correctly states the government's burden of proof."  511 U.S. at 14–15.

16  Accordingly, use of CALCRIM No. 220 did not violate Petitioner's right to due process.

17      Because the state appellate court's decision was neither contrary to nor an

18  unreasonable application of federal law, Petitioner's claim is DENIED.

19  **I.    Cumulative Error**

20      Petitioner claims that the cumulative effect of the errors he has alleged above deprived

21  him of due process and a fair trial.  (Pet. at 27.)  The state appellate court succinctly rejected

22  Petitioner's claim, finding that "[t]here was no cumulative prejudice because there was no

23  cumulative error."  (Ans., Ex. F at 22.)

24      While it is true that the cumulative effect of several errors may prejudice a defendant

25  so much that his conviction must be overturned, see Alcala v. Woodford, 334 F.3d 862,

26  893–95 (9th Cir. 2003), where there is no single constitutional error existing, nothing can

27  accumulate to the level of a constitutional violation, see Mancuso v. Olivarez, 292 F.3d 939,

28

1   957 (9th Cir. 2002).  In the instant case, because there are no constitutional errors, there

2   cannot have been cumulative error.  Accordingly, Petitioner's claim is DENIED.

3   **J.      Sentencing**

4          Finally, Petitioner contends that the trial court deprived him of due process and equal

5   protection of the law by imposing the twenty-five years-to-life sentence on the One Strike

6   kidnapping conviction rather than the fifteen years-to-life sentence.  (Pet. at 28.)  Without

7   elaboration, Petitioner asserts that his rights were violated because the One Strike statute can

8   be arbitrarily applied based solely on prosecutorial charging discretion.  (Id.)

9          The state appellate court noted that under California law, "[a]n act . . . that is

10  punishable in different ways by different provisions of law shall be punished under the

11  provision that provides for the longest potential term of imprisonment," as long as it is not

12  punished under more than one provision.  (Ans., Ex. F at 24) (quoting Cal. Pen. Code § 654).

13  The state appellate court then rejected Petitioner's due process claim because it found that

14  none of the cases Petitioner cited "suggests that when a jury has found that a defendant's

15  conduct comes within the terms of more than one properly alleged sentence-enhancement

16  provision, it is a violation of due process to impose the more severe of the statutory

17  penalties."  (Id. at 24–25.)  The state appellate court also rejected Petitioner's equal

18  protection claim.  The appellate court found that there was no violation of equal protection of

19  the law because "[a]nyone who is found to come within the purview of section 667.61,

20  subdivision (d)(2) is subject to a sentence of [twenty-five] years to life."  (Id.)

21         State sentencing courts must be accorded wide latitude in their decisions as to

22  punishment.  See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987).  Federal habeas relief

23  is not justified even if a state court misapplies its own sentencing laws, unless there is a

24  showing of fundamental unfairness.  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

25  As to the use of Three Strikes, the Supreme Court has held that "[t]hough three strikes laws

26  may be relatively new, our tradition of deferring to state legislatures in making and

27  implementing such important policy decisions is longstanding."  Ewing v. California, 538

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   U.S. 11, 24 (2003).  Because of this tradition of deference, a federal court may not review a

2   state sentence that is within statutory limits.  See id.  There are exceptions under the Due

3   Process Clause and the Eighth Amendment, however.[5]  A federal court may grant relief from

4   a state sentence imposed in violation of due process.  For example, if a state trial judge

5   imposed a sentence in excess of state law, see Walker, 850 F.2d at 476, or enhanced a

6   sentence based on materially false or unreliable information or based on a conviction infected

7   by constitutional error, see United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995), such

8   sentence would not meet federal due process requirements.

9         Here, Petitioner has failed to show that he was denied due process or equal protection

10  of the law; he has not made a showing of fundamental unfairness.  At trial, the jury convicted

11  Petitioner of rape and found the following special allegations to be true:  that count one

12  involved kidnapping and moving the victim, and thereby substantially increased the risk of

13  harm to the victim within the meaning of §§ 667.61(a), (c), and (d)(2), and that it involved

14  kidnapping the victim within the meaning of §§ 667.61(a), (b), and (e)(1).  (Ans., Ex. F at 5.)

15  Under section 667.61, the sentencing court must impose a twenty-five years-to-life sentence

16  upon any defendant who falls within the purview of subdivision (a), and a fifteen years-to-

17  life upon any defendant who falls within the purview of subdivision (b).  See Cal. Pen. Code.

18  § 667.61.  As the state appellate court noted, under section 654 of the California Penal Code,

19  "an act . . . that is punishable in different ways by different provisions of law shall be

20  punished under the provision that provides for the longest potential term of imprisonment."

21  Id. at § 654(a) (emphasis added).  In other words, because the jury found the special

22  allegation under section 667.61(a) and (d)(2) to be true, Petitioner's twenty-five years-to-life

23  sentence was mandatory — the sentencing court did not have discretion to impose any other

24  sentence.  Moreover, at the sentencing hearing, defense counsel, the prosecution and the

25  court all agreed that the twenty-five years-to-life sentence was mandatory.  (Ans., Ex. B, Vol.

26  7 at 952, 956, 962.)  Because Petitioner's sentence is within statutory limits, his claim must

27  be DENIED.

28

**CONCLUSION**

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED**.

DATED:  May 12, 2010

_____
MARILYN HALL PATEL
United States District Judge

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

**NOTES**

2   1. The jury convicted Petitioner of rape (Cal. Penal Code § 261(a)(2)), kidnap to commit rape
(§ 209(b)(1), lewd act upon a child (§ 288 (c)(1)), second degree robbery (§ 211), witness
3   intimidation (§ 136.1(c)(1)), assault with a deadly weapon (§ 245(a)(1)), false representation to
a peace officer (§ 148.9(a)), and injuring a wireless communication device (§ 591.5). (Ans., Ex.
4   F at 1, 5.)  The jury also found all of the following allegations to be true: count one, that it
involved kidnapping and moving the victim and thereby substantially increased the risk of harm
5   to the victim within the meaning of §§ 667.61(a), (c), and (d)(2), that it involved kidnapping the
victim within the meaning of §§ 667.61(a), (b), and (e)(1), and that it involved the personal use
6   of a deadly weapon within the meaning of § 12022.3(a); count two, that it involved the personal
use of a deadly weapon within the meaning of § 12022.3(b)(1); count three, that it involved the
7   personal use of a deadly weapon within the meaning of § 12022.3(a), count four, that it involved
the personal use of a deadly weapon within the meaning of § 12022.3(b)(1); count five, that it
8   involved the personal use of a deadly weapon within the meaning of § 12022.3(b)(1). Id.

9   2. The trial court sentenced Petitioner to twenty-five years to life on count one (forcible rape
with aggravated kidnapping enhancement), plus a four-year enhancement for personal use of a
10   deadly weapon, for a total of twenty-nine years in state prison.  The court ordered a consecutive
thirty days in county jail for count seven (misdemeanor giving false information to a police
11   officer), and stayed the sentences for the remaining counts under Penal Code § 654. (Ans., Ex.
F at 5–6).

12
13   3. The pages of Petitioner's Petition are not in numerical order.  Citations to pages in the Petition
are in accordance with the order in which Petitioner filed the Petition with the Court.

14   4. However, Hokanson also testified that students sometimes loitered in a courtyard near the
pathway in the mornings, (Ans., Ex. B, Vol. 5 at 511–12), and that she did not hear any unusual
15   noises outside her window on the particular day that the offense had occurred.  (Id. at 499–500.)

16   5. Petitioner has not alleged an Eighth Amendment violation.

17

18

19

20

21

22

23

24

25

26

27

28